PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GARNELL THOMPSON,

             Plaintiff,

    v.                                         Case # 22-CV-6307-FPG

                                             ORDER
NEW YORK STATE CORRECTIONS AND
COMMUNITY SUPERVISION; C. YEHL,
Superintendent; L. URBAN, Deputy
Superintendent for Program Services,
individually and in their official capacities,

             Defendants.

_____

*Pro se* Plaintiff Garnell Thompson is a prisoner confined at the Wende Correctional Facility ("Wende"). He filed a Complaint asserting claims under 42 U.S.C. § 1983, alleging that New York State Department of Corrections and Community Supervision ("DOCCS"); C. Yehl, Superintendent of Wende ("Superintendent Yehl"); and L. Urban, Deputy Superintendent for Program Services at Wende ("DSP Urban") (collectively, "Defendants") acted with deliberate indifference in revoking certain reasonable accommodations for his poor vision he previously had been granted. ECF No. 1 at 4 ¶¶ 14-16. Plaintiff also has filed a motion a Motion to Proceed *In Forma Pauperis*, ECF No. 7; a Motion for a Preliminary Injunction, ECF No.4; a Motion to Appoint Counsel, ECF No. 5; and a Motion for Default Judgment, ECF No. 14.

For the reasons that follow, the Court finds that Plaintiff's Eighth Amendment claims against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities are barred by Eleventh Amendment sovereign immunity and are dismissed with prejudice. The Court further finds that the Complaint plausibly states an Eighth Amendment deliberate indifference claim against DSP Urban in his individual capacity and will allow that claim to proceed to service.

However, the Complaint does not plausibly allege Superintendent Yehl's personal involvement in a constitutional violation and therefore the Eighth Amendment claim against him in his individual capacity is dismissed with prejudice.  Because the Complaint is ambiguous as to whether Plaintiff is pursuing Eighth Amendment deliberate indifference claims against several medical defendants at Wende, he will be afforded an opportunity to file an amended complaint to allege such claims. The Court further concludes that the Complaint plausibly states claims based on the denial of reasonable accommodations under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*; and the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 749(a), *et seq.* These claims will be allowed to proceed against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities only, since individual capacity suits are barred under both the ADA and the Rehabilitation Act.  Finally, to the extent the Complaint asserts Fourteenth Amendment due process and equal protection claims against DOCCS, and against Superintendent Yehl and DSP Urban in their individual and official capacities, the Court dismisses all such claims without leave to replead.

## DISCUSSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed a properly supported Motion to Proceed *In Forma Pauperis*, ECF No. 7, along with the required Inmate Authorization Form, ECF No. 3.  Accordingly, the Court grants Plaintiff permission to proceed *in forma pauperis*.  Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court must screen the Complaint.

Sections 1915 and 1915A "provide an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall dismiss a complaint in a civil

action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see also id.* § 1915(e)(2)(B) (setting forth identical grounds for dismissal).

Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639. But leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to amend where "the problem with [the plaintiff's] causes of action is substantive" such that a "better pleading will not cure it") (citation omitted).

## I.    The Complaint

In evaluating Plaintiff's complaint, the Court must accept all factual allegations as true and must draw all inferences in his favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

Plaintiff has been in DOCCS custody since 2006.  ECF No.1 ¶ 12.  On December 18, 2020, he was approved for certain reasonable accommodations because he is legally blind and suffers from glaucoma.  *Id.* ¶ 24.  As a result of his visual impairments, Plaintiff asserts, he experiences vertigo, dizziness, and serious mobility issues, making him a fall risk.  *Id.* ¶ 20.

At some point in time, he was transferred from the Elmira Correctional Facility to Wende. When he arrived at Wende, C. Ewing, an instructor of the blind who is not a party to this action, told Plaintiff that he had to reapply for the reasonable accommodations he previously had been granted.  *Id.* ¶¶ 3, 24.

In August of 2021, Ewing provided Plaintiff with the following reasonable accommodations to help him see, walk, read, and write:  a guidance cane, sunglasses, a magnifier, a lamp, a cassette player, some "20/20 pens", and writing papers.  *Id.* ¶ 14.

On August 20, 2021, Plaintiff was examined by an unidentified eye doctor at Wende.  *Id.* ¶ 15.  Following that examination, certain unidentified "Wende Prison Medical Personnel" "downgraded" Plaintiff's visual impairment and failed to provide him with corrective lenses that had been prescribed by the eye doctor.  *Id.*

On October 5, 2021, Ewing notified Plaintiff that, as a result of his visual impairment being reclassified at a less severe level, he had to return the reasonable accommodations provided to him in August of 2021.  *Id.* ¶ 16.  Ewing subsequently ordered the removal of the reasonable accommodations from Plaintiff's cell.  *Id.*

Plaintiff wrote a complaint letter to non-party Nurse Administrator-1 K. Gugino ("Nurse Administrator Gugino"), accusing unidentified "medical personnel" at Wende of deliberate indifference to his health and safety based on the downgrading of his visual impairment.  *Id.* ¶ 17.

4

Nurse Administrator Gugino responded that, based upon her review of his medical records, "no deliberate indifference was shown [to him] by staff. . . ." *Id.*

On November 30, 2021, after not receiving his prescribed corrective lenses, Plaintiff filed a request with DSP Urban for reasonable accommodations, including a support cane, visor/sunglasses, magnifiers, "CCTV", cassette player and cassettes, and "large print." *Id.* ¶ 18. DSP Urban denied his application on January 27, 2022. *Id.*

Plaintiff filed a grievance challenging DSP Urban's decision, and a superintendent's hearing was conducted on January 28, 2022. *Id.* ¶ 19. DSP Urban refused Plaintiff's request for an assistant during the hearing. *Id.* Plaintiff explained to DSP Urban that without the reasonable accommodations he previously had been provided, he could not see or walk properly. *Id.* In addition, Plaintiff informed DSP Urban that he was in violation of DOCCS "Directive 2614(VIII)(B)" by not providing him the corrective lenses within seven days. DSP Urban responded that Wende "does not follow Directive 2614(VIII)(B)." *Id.* Frustrated, Plaintiff left the hearing. *Id.* A few days later, DSP Urban affirmed the denial of Plaintiff's request for reasonable accommodations. *Id.*

Plaintiff pursued a grievance, alleging "deliberate indifference" by "DOCCS[,] its employees, agents[,] and servants" because they "improperly modified reasonable accommodations he had been medically verified for" and "were disobeying doctor's orders showing deliberate indifference to his health and safety," since he was severely visually impaired, legally blind, suffering from v[e]rtigo, dizziness, serious mobility issues, and was a fall risk." *Id.* ¶ 20. The grievance was denied at all levels of review.

Because reasonable accommodations have been withheld from him, Plaintiff has been denied access to exercise, yard, gym, showers, the law library, and other unspecified programs,

services, and activities. *Id.* ¶ 23. At the time he filed his Complaint, Plaintiff had been without the corrective lenses prescribed by the eye doctor for over six months. He suffers "extreme" pain on a "daily" basis from bumping into walls, falling down flights of stairs, and tripping over objects. *Id.* ¶ 26.

## II.   Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)) (citation omitted).

The Second Circuit has clarified that, following *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)*,* "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). To establish a supervisor's personal involvement in a constitutional violation, a plaintiff "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quotation omitted).

A.      **Eleventh Amendment Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  By withdrawing jurisdiction, the Eleventh Amendment "effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  Thus, "'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'"  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quotation omitted).

New York has not waived its Eleventh Amendment immunity to suit in federal court. *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).  And because DOCCS is "an arm of the state," it "stands in the same position as the State of New York."  *White v. New York*, No. 19-CV-0543, 2019 WL 2578270, at *1 (S.D.N.Y. June 24, 2019); *Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) ("Agencies of the state, such as DOCS,[1] are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest.") (citations omitted)).  Moreover, 42 U.S.C. § 1983 does not abrogate a state's Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 338-39 (1979).  Therefore, Plaintiff's § 1983 claims against DOCCS are barred by the Eleventh Amendment and must be dismissed.

---

[1] In 2011, DOCS, the New York State Department of Correctional Services, merged with the New York State Division of Parole to become DOCCS.  *Warren v. Pataki*, 823 F.3d 125, 133-34 n.4 (2d Cir. 2016).

The two individual defendants, Superintendent Yehl and DSP Urban, are DOCCS employees.  Eleventh Amendment immunity which "extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)); *see also Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.")).  Plaintiff's § 1983 claims for money damages against Superintendent Yehl and DSP Urban in their official capacities are barred by the Eleventh Amendment and must be dismissed.[2]

Plaintiff also sues Superintendent Yehl and DSP Urban in their individual capacities for money damages.  State officials are amenable to suit under § 1983 "in their individual capacities for both prospective and retrospective relief [such as monetary damages]." *Huminski*, 396 F.3d at 70 (citing *Hafer v. Melo*, 502 U.S. 21, 23 (1991) (other citation omitted)).  Therefore, the Court will consider whether the Complaint states colorable § 1983 claims against Superintendent Yehl and DSP Urban in their individual capacities.

**B.    Eighth Amendment**

The Complaint does not cite any particular constitutional provision, but its reference to "deliberate indifference" calls to mind the Eighth Amendment's prohibition of "cruel and unusual punishments[,]" U.S. CONST. amend. VIII, which "imposes a duty upon prison officials to ensure

---

[2] "[S]tate officials can be subject to suit in their official capacities for injunctive or other prospective relief." *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)). Currently, however, the Complaint does not seek injunctive relief under § 1983 against the individual defendants in their official capacities.

that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)).   To succeed on a claim that inadequate medical care violated the Eighth Amendment, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   The deliberate indifference standard includes both an objective and subjective component. *Chance v. Armstrong*, 143 F. 3d 698, 702 (2d Cir. 1998).   "First, the deprivation alleged must be, objectively, 'sufficiently serious[.]'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).   Second, the defendant must have had actual knowledge of, and nonetheless disregarded, "an excessive risk to inmate health or safety." *Id.* at 837.

### 1.      The Objective Component

Factors relevant to assessing the objective seriousness of a medical condition include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (quotation and citation omitted).   Plaintiff alleges that he is legally blind and suffers from glaucoma, and has received medical attention over the years for these conditions.   In addition, due to his severe visual impairment, he experiences vertigo, dizziness, and serious mobility issues including tripping, falling, and bumping into walls.   Plaintiff states that without his previously provided reasonable accommodations for his visual impairments, he is unable to exercise, go to yard, use the showers, or use the law library.   The Court finds that Plaintiff has plausibly alleged an objectively serious medical condition. *See, e.g.*, *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (prisoner's alleged medical need for prescribed eyeglasses to avoid double vision and loss of depth perception that resulted from prior head injury was sufficiently serious to support

9

objective element of deliberate indifference claim); *Todaro v. Ward*, 565 F.2d 48, 53 n.6 (2d Cir. 1977) (characterizing glaucoma and eye infections as "serious ailments"); *McFadden v. Noeth*, 827 F. App'x 20, 27 (2d Cir. 2020) (summary order) (state prisoner, diagnosed as hearing impaired, adequately alleged an objectively serious medical need by asserting that that the denial of hearing aids precluded him from engaging in normal activities and that the denial of a vibrating alarm increased the risk he would fail to appear for morning counts, which could have resulted in punishment).

## 2. The Subjective Component and Personal Involvement in the Alleged Eighth Amendment Violation

### a. *DSP Urban*

The Court finds that Plaintiff has plausibly alleged DSP Urban's direct involvement in the denial of his request for reasonable accommodations since DSP Urban reviewed and denied the initial application and conducted a hearing on it.  Regarding the deliberate indifference element, Plaintiff informed DSP Urban at the hearing that he had not been issued the corrective lenses that recently had been prescribed by the eye doctor for his visual impairments and that without reasonable accommodations for those impairments, he could not see or walk properly.  ECF No.1 ¶ 19.  In *McFadden*, 827 F. App'x at 28, the Second Circuit found that the plaintiff had adequately alleged the subjective element of an Eighth Amendment claim where he stated that he made requests for hearing aids and that the defendants were aware of his diagnosis as hearing impaired, such that their denial of the accommodations was the result of their deliberate indifference to his health and safety.  Construing Plaintiff's Complaint with the utmost leniency, as it must, the Court finds that Plaintiff has alleged a deliberate indifference claim against DSP Urban based on the denial of reasonable accommodations, sufficient to survive initial screening.

### b.      *Superintendent Yehl*

The only allegation concerning Superintendent Yehl is that he affirmed the denial of Plaintiff's grievance complaining about DSP Urban's denial of his request for reasonable accommodations.  *See* ECF No. 1 ¶ 20 ("[T]he Superintendent and Central Office Review Committee (CORC) affirmed IGRC's determination.").  Courts in this Circuit consistently have held that the mere affirmance of the denial of a grievance is insufficient to allege personal involvement.  "Invariably, a prisoner's grievance is passed upon by the Superintendent, and by the director of the CORC if the prisoner pursues a further appeal." *James v. Poole*, No. 06-CV-6007 MAT, 2013 WL 132492, at *7 (W.D.N.Y. Jan. 9, 2013) (citations omitted); *see* N.Y. Comp. Code R. & Regs., tit. 7, § 701.5(c), (d) (stating that the second step of the grievance process is an appeal to the superintendent; the third step is to the CORC acting on behalf of the commissioner of DOCCS).  Furthermore, Superintendent Yehl cannot be held personally responsible "simply because he was in a high position of authority in the prison system." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994).  Accordingly, the Eighth Amendment claim against Superintendent Yehl will be dismissed due to the failure to allege his personal involvement.  Leave to amend will not be granted since the Complaint does not suggest the existence of any facts that would allow Plaintiff to plead and prove an Eighth Amendment violation directly against Superintendent Yehl.

### c.      *The Unnamed Wende Medical Personnel*

Plaintiff has not identified or named as defendants any of the "medical personnel" who allegedly "downgraded" his visual impairment and refused to provide him with corrective lenses that had been prescribed by the eye doctor.  It is unclear whether Plaintiff intends to pursue Eighth Amendment claims against these unnamed "medical personnel."  In any event, Plaintiff has not included any factual allegations from which the Court may infer that the unnamed "medical personnel" knew of, and disregarded, an excessive risk to his health or safety.  For instance,

Plaintiff does not include any allegations concerning what he told the "medical personnel" who "downgraded" his visual classification about the various problems he was having.  Therefore, Plaintiff has not plausibly alleged the subjective component of an Eighth Amendment claim with regard to the unnamed medical personnel, or their personal involvement in the purported constitutional violation.

If Plaintiff wishes to proceed on Eighth Amendment claims against the unnamed medical personnel and he does not know their names, he may name them as John Doe or Jane Doe defendants.  In that case, he should allege as much identifying information as he can about them (*e.g.*, physical descriptions and dates on which they treated him) to assist with ascertaining their identities.  If Plaintiff fails to submit an amended complaint that remedies these deficiencies, any Eighth Amendment claim against the unnamed Wende medical personnel will be dismissed with prejudice.

### d.    *Nurse Administrator Gugino*

Plaintiff does not name as a defendant Nurse Administrator Gugino, who reviewed his medical record and responded to his letter of complaint about his treatment following the eye doctor appointment.  *See* ECF No. 1 ¶ 17.  Even if he had, Plaintiff has not plausibly alleged facts from which the Court could infer her direct, personal involvement in the claimed constitutional violation.  In particular, Plaintiff has alleged no facts from which the Court could infer that she knew of and disregarded an excessive risk to Plaintiff's health and safety.  If Plaintiff wishes to proceed against Nurse Administrator Gugino based on an Eighth Amendment claim, he must file an amended complaint naming her as a defendant.  Plaintiff also must allege Nurse Administrator Gugino's direct, personal involvement in the claimed Eighth Amendment violation and set forth

sufficient facts from which the Court plausibly may infer that she knew of, and disregarded, an excessive risk to his health or safety.

### C.      Fourteenth Amendment and Procedural Due Process

Though the Fourteenth Amendment is not specifically referenced in the Complaint, the Court has considered whether Plaintiff has asserted a procedural due process claim based on (1) the alleged denial of an assistant during the hearing conducted by DSP Urban regarding the denial of Plaintiff's application for reasonable accommodations for his visual impairment; and (2) DSP Urban's purported refusal to comply with DOCCS Directive 2614.

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted), *abrogated on other grounds, Sandin v. Conner*, 515 U.S. 472, 484 n.5 (1995). "The requirements of procedural due process apply *only* to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972) (emphasis supplied). "[A]n expectation of receiving process is not, without more, a liberty [or property] interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) (collecting cases). It is therefore critical that the plaintiff identify a protected liberty or property interest.

As an initial matter, it is well-settled that "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (citing *Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 390 n.3 (W.D.N.Y. 1998); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.

1994); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *Harris v. Keane*, 962 F. Supp. 397, 406 (S.D.N.Y. 1997)).   A prison grievance procedure at most creates an expectation of process; "'it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'"   *Mahotep*, 3 F. Supp. 2d at 390 n.3 (quoting *Buckley*, 997 F.2d at 495) (citation omitted); *see also Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." (citing *Cancel v. Goord*, No. 00 Civ.2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001)).   "If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim."   *Shell*, 365 F. 2d at 370 (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).   Thus, to the extent Plaintiff alleges that DSP Urban violated an internal DOCCS procedure by not providing him with an assistant at the hearing regarding the denial of his application for reasonable accommodations, such an allegation does not give rise to a colorable due process claim.

Furthermore, the Complaint does not plausibly allege an interest protected by the Fourteenth Amendment's Due Process Clause.   The Superintendent's hearing conducted by DSP Urban was not a disciplinary hearing that could potentially expose him to confinement or other punishment.   Thus, Plaintiff's liberty was not at issue at the hearing.   The subject of the hearing simply was whether the denial of reasonable accommodations was incorrect.   Courts have declined to find that inmates have property or liberty interests in reasonable accommodations that qualify for protection under the Due Process Clause.   *See*, *e.g.*, *Crichlow v. Annucci*, No. 921CV0692DNHTWD, 2022 WL 179917, at *21 (N.D.N.Y. Jan. 20, 2022) (prisoner alleged that two prison officials denied him reasonable accommodations during his disciplinary hearings which

14

prevented him from fully participating in hearings; court rejected claim, stating that "a right to accommodations for a hearing disability does not fall under the rights which have generally been accorded to prisoners under the Due Process Clause") (citations omitted); *Stamm v. New York City Transit Auth.*, No. 04-CV-2163 (SLT), 2006 WL 1027142, at *9 (E.D.N.Y. Feb. 7, 2006) ("[T]he fact that a reasonable accommodation for a person with a disability is required by the ADA . . . does not imply that the disabled person has a property right in that accommodation."); *Bartlett v. New York State Bd. of Law Examiners*, 970 F. Supp. 1094, 1142 (S.D.N.Y. 1997) (declining to find that the "failure to uphold plaintiff's statutory rights under the ADA . . . amounts to a sufficient liberty or property interest under the due process clause to give plaintiff a claim"), *aff'd in part, vacated and remanded in part on other grounds*, 226 F.3d 69 (2d Cir. 2000)..

Regarding the allegation that DSP Urban violated "Directive 2614(VIII)(B)," Plaintiff is presumably referring to DOCCS Directive 2614, entitled "Reasonable Accommodations for Inmates with Disabilities."  *See Boomer v. Bentivegna*, No. 19-CV-4754 (PMH), 2021 WL 1163658, at *4 (S.D.N.Y. Mar. 26, 2021) (citing *Dimperio v. New York State Dep't of Corr. & Cmty. Supervision*, No. 13-CV-1010, 2015 WL 1383831, at *3 (N.D.N.Y. Mar. 25, 2015)). However, there does not appear to be a subsection "VIII" in the current version of Directive 2614, and Plaintiff does not indicate the substance of the provision that DSP Urban allegedly violated. In any event, courts in this Circuit have consistently held that "a violation of a DOCCS directive does not state a claim for a constitutional violation under § 1983." *Tuitt v. Chase*, No. 9:11-CV-0776 DNH/TWD, 2013 WL 877439, at *10 (N.D.N.Y. Jan. 30, 2013) (citing *Dillhunt v. Theriault*, No. 9:07-CV-0412 (GTS/DEP), 2009 WL 4985477, at *11 (N.D.N.Y. Dec. 15, 2009), *report and recommendation adopted*, No. 9:11-CV-0776 DNH/TWD, 2013 WL 877617 (N.D.N.Y. Mar. 8, 2013)).

In sum, Plaintiff has not pleaded a plausible violation of his due process rights.  Because the Complaint does not imply the existence of any facts that would allow Plaintiff to state a plausible violation of the rights guaranteed by the Fourteenth Amendment's Due Process Clause, leave to amend is denied as to this claim.

### D.      Fourteenth Amendment and Equal Protection

The Court has also considered whether Plaintiff has asserted an equal protection claim under the Fourteenth Amendment based on his assertion that no other inmates with disabilities were denied reasonable accommodations.  ECF No. 1 ¶ 25.

The Equal Protection Clause of the Fourteenth Amendment provides that no "State [shall] deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  It thus "requires the government to treat all similarly situated people alike."  *Afr. Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362–63 (2d Cir. 2002) (citations omitted).  A plaintiff can show an equal protection violation by "prov[ing] purposeful discrimination, directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal and other citation omitted).

A plaintiff also may pursue a "class of one" claim by "alleg[ing] that [he] has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Afr. Trade & Info. Ctr., Inc.*, 294 F.3d at 362-63 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted in original)).  "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a

comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010).

The Complaint, read with the utmost liberality, at most suggests a "class of one" claim. However, it is deficient because Plaintiff has not specified any others "similarly situated" that could serve as comparators. The Second Circuit used to find that "a 'class of one' claim is adequately pled ('albeit barely' so) even without specification of others similarly situated." *Ruston*, 610 F.3d at 59–60 (quoting *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003)). However, *DeMuria* relied on a "now-obsolete" pleading standard that has been superseded by the Supreme Court's clarification that a complaint must allege "facts sufficient to establish 'a plausible claim for relief[.]'" *Ruston*, 610 F.3d at 59 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (citation omitted). Now, a plaintiff no longer can state a plausible equal protection claim under a class-of-one theory without specifying comparators. *See id.* at 60 ("As the Rustons fail to allege that properties sufficiently similar to theirs were treated more favorably by either the Village or the Town, they have failed to state a 'class of one' equal protection claim."). Therefore, Plaintiff has failed to state a viable equal protection claim here.

The Court declines to permit amendment because, even construed liberally, the Complaint does not suggest the existence of any facts on which Plaintiff could rely to specify comparators, which is a necessary element of an equal protection claim. Therefore, amendment would be futile and this claim is dismissed with prejudice.

III.   **Claims Under the ADA and the Rehabilitation Act**

The Court is mindful of its obligation to construe this *pro se* Complaint liberally to raise the strongest claims it suggests.  Plaintiff's reference throughout his Complaint to Defendants' failure to grant him "reasonable accommodations" calls to mind Title II[3] of the ADA and § 504 of the Rehabilitation Act, since the "failure to make a reasonable accommodation[,]" *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009), is a theory of discrimination that can be used to establish a claim based on disability discrimination, *see id.*

Title II of the ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, § 504 of the Rehabilitation Act protects a "qualified individual with a disability" from exclusion of participation, denial of benefits, or subjection to discrimination based on the individual's disability "under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

Although the ADA and the Rehabilitation Act are "nearly identical[,]" *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012), there are two differences.  First, "all public entities are subject to Title II, whereas Section 504 of the RA applies only to those institutions 'receiving Federal financial assistance.'"  *Williams v. Barometre*, No. 20-CV-7644 (KMK), 2022 WL 903068, at *15 (S.D.N.Y. Mar. 28, 2022) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (quoting 29 U.S.C. § 794(a)).  Second, "the reach of the Rehabilitation Act is limited

---

[3] The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III."  *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).

to denials of benefits '*solely* by reason of . . . disability,' while the ADA applies more broadly to such denials 'by reason of . . . disability.'" *Schine by Short v. New York State Off. for People with Developmental Disabilities*, No. 15-CV-5870, 2017 WL 9485650, at *4 (E.D.N.Y. Jan. 5, 2017) (quoting 29 U.S.C. § 794(a); 42 U.S.C. § 12132)), *report and recommendation adopted*, 2017 WL 1232530 (E.D.N.Y. Mar. 31, 2017).  Neither distinction appears is implicated here.  Therefore, the Court may analyze Plaintiff's allegations vis-à-vis the ADA and the Rehabilitation Act simultaneously.  *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (treating Rehabilitation Act and ADA claims brought by a state prisoner "identically" where the "subtle distinctions" between the two statutes were not at issue).

### A.    Elements of an ADA and Rehabilitation Act Claim

To state a plausible claim under the ADA and Rehabilitation Act, a New York State prisoner must allege that: (1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of, some service, program, or activity offered by DOCCS; and (3) DOCCS is a public entity.  *Wright*, 831 F.3d at 72 (citing *Henrietta D.*, 331 F.3d at 272).  The "public entity" element does not appear to be in dispute.  *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998) (stating that the "plain text of Title II of the ADA unambiguously extends to state prison inmates"); *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1036 (S.D.N.Y. 1995) ("The Rehabilitation Act has been held to apply to prisoner claims as a general matter.") (citations omitted).  "Additionally, to establish a violation under [Section 504 of the Rehabilitation Act], a plaintiff must show that the [public entity] receive[s] federal funding." *Henrietta D.*, 331 F.3d at 272.  The fact that DOCCS "accepts federal funding is subject to judicial

notice." *Ramirez v. Bernstein*, No. 17 CV 3825 (VB), 2020 WL 7230729, at *7 (S.D.N.Y. Dec. 7, 2020) (citing *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 414 & n.2 (S.D.N.Y. 2006)).

"For purposes of determining whether an ADA plaintiff is a 'qualified individual with a disability,' 42 U.S.C. § 12131(2), the ADA defines 'disability' to include, *inter alia*, 'a physical or mental impairment that substantially limits one or more major life activities[.]'" *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) quoting 42 U.S.C. § 12102(1)(A))). "The Rehabilitation Act defines the term 'individual with a disability' by cross reference to the [ADA]." *Martinez v. New York State Div. of Hum. Rts.*, No. 1:13-CV-1252-GHW, 2015 WL 437399, at *5 (S.D.N.Y. Feb. 2, 2015) (citing 29 U.S.C. § 705(20)(B) (citing 42 U.S.C. § 12102)(1))). Plaintiff alleges that his visual conditions impair his ability to see and walk. Seeing and walking are unquestionably major life activities. *See* 28 C.F.R. § 35.108(c)(1)(i); *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 155 (2d Cir. 1998) (stating that "seeing, hearing, or walking . . . are treated by the [Equal Employment Opportunity Commission] regulations and by [the Second Circuit's] precedents as major life activities *per se*"), *superseded by statute on other grounds as stated in Hilton v. Wright*, 673 F.3d 120 (2d Cir .2012). Plaintiff therefore has plausibly alleged the second element of a claim under ADA Title II and Rehabilitation Act § 504.

"A qualified individual can base a discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" *Fulton*, 591 F.3d at 43 (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003)). A "reasonable accommodation" is one that would permit a qualified disabled individual "to have access to and take a meaningful part in public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected*, 511 F.3d 238

20

(2d Cir. 2004). Discussing the concepts of "reasonable accommodation" and "meaningful access" in the prison setting, the Second Circuit has stated that to be "reasonable," "the accommodation must overcome structural impediments and non-trivial temporal delays that limit access to programs, services, and activities." *Wright*, 831 F.3d at 73. "An accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him." *Id.* (citations omitted).

The Court finds that Plaintiff has plausibly alleged a claim under the reasonable accommodation theory. He states that he requested reinstatement of certain reasonable accommodations for his visual impairment that previously had been approved; that his request was denied; and that, as a result of this decision, he was, "as a practical matter," *Henrietta D.*, 331 F.3d at 273, denied "meaningful access," *id.*, to services, programs, or activities—the law library, gym, yard, showers, and exercise—to which he was "legally entitled," *id.* Accordingly, the Court finds that Plaintiff has stated a plausible failure-to-accommodate claim under Title II of the ADA and § 504 of the Rehabilitation Act, sufficient to survive initial screening. *See Ramirez*, 2020 WL 7230729, at *7 (inmate who required wheelchair for mobility and had limited use of arms and legs stated failure-to-accommodate claim where denial of request for placement in housing unit for physically disabled inmates prevented him from safely entering and exiting his bed, showering, and cleaning his cell); *Walker v. City of New York*, 367 F. Supp. 3d 39, 54 (S.D.N.Y. 2019) (inmate adequately stated a claim under the ADA where he repeatedly requested, and was denied, reasonable accommodations for visually impaired persons to access the law library, which

"impeded, if not outright prevented, [him] from using the law library[,]" which is "a vital public service").

> **B.**     **Immunity From Suit and Appropriate Relief**
>
> > **1.**     **Individual Capacity Suits Are Barred Under the ADA and the Rehabilitation Act**

Insofar as Plaintiff is suing Superintendent Yehl and DSP Urban in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act allows individual capacity suits—either for damages or injunctive relief—against state officials. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases). Therefore, to the extent that the Complaint asserts claims under Title II of the ADA and § 504 of the Rehabilitation Act against the individual defendants in their individual capacities, such claims are statutorily barred and fail as a matter of law. *See Lenti v. Connecticut*, No. 3:20-CV-127 (SRU), 2020 WL 4275600, at *7 (D. Conn. July 24, 2020) (dismissing, pursuant to 28 U.S.C. § 1915A(b)(1), plaintiff's Title II ADA claim against a state official in her individual capacity because it failed to state a claim upon which relief may be granted).

> > **2.**     **DOCCS and the Individual Defendants in Their Official Capacities May Be Sued for Prospective Injunctive Relief Under Title II of the ADA and § 504 of the Rehabilitation Act**

Claims for declaratory and injunctive relief against state employees and agents in their official capacities are not specifically barred by the Eleventh Amendment. *Davis v. New York*, 316 F.3d 93, 101-02 (2d Cir. 2002). The Second Circuit has held that "Title II and Rehabilitation Act suits for prospective injunctive relief may, under the doctrine established in *Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), proceed against individual officers in their official capacity." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations in original).

Here, the Complaint names DOCCS as well as Superintendent Yehl and DSP Urban in their official capacities but does not include a request for prospective injunctive relief.  However, Plaintiff's Motion for a Preliminary Injunction, filed on the same day as the Complaint, does seek prospective injunctive relief.  This suggests that Plaintiff may have intended to assert a demand for such prospective injunctive relief in the Complaint in addition to his request for compensatory damages.

Under Fed. R. Civ. P. 8(a)(3), a complaint "may include relief in the alternative or different types of relief."  Therefore, Plaintiff's request for damages in the Complaint does not prohibit him from also seeking injunctive relief.  If Plaintiff wishes to proceed on Title II and Rehabilitation Act claims for the prospective injunctive relief requested in the Motion for a Preliminary Injunction, he must file an amended complaint that specifically includes a demand for that relief.

### 3. Eleventh Amendment Immunity and the Availability of Compensatory Damages Under the Rehabilitation Act

In order to abrogate a State's sovereign immunity, Congress must (1) make "its intention to abrogate unmistakably clear in the language of the statute" and (2) act "pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment."  *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).  The first requirement is met; the Second Circuit has observed that in Section 504 of the Rehabilitation Act, Congress unequivocally expressed its "intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity."  *Garcia*, 280 F.3d at 113 (citing 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of Section 504 of the Rehabilitation Act of 1973.")).

As to the second requirement, Congress enacted the Rehabilitation Act pursuant to its authority under the Spending Clause in Article I of the Constitution. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001) (citing U.S. CONST. art. 1, § 8, cl. 1). "When acting pursuant to this authority, Congress may provide funds to the states and may require that the states, as a condition of receiving those funds, waive their sovereign immunity." *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) (citing *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686-87 (1999)). Nonetheless, to be effective, a "waiver of sovereign immunity requires an 'intentional relinquishment or abandonment of a known right or privilege.'" *Garcia*, 280 F.3d at 114 (quoting *College Sav. Bank*, 527 U.S. at 682).

The Second Circuit in *Garcia* found that that at the time of the relevant acts of disability discrimination, New York State believed its sovereign immunity with respect to disability claims already had been lost. *Garcia*, 280 F.3d at 114 (citation omitted). Thus, it could not have knowingly and intentionally relinquished its sovereign immunity by accepting federal funds under § 504 of the Rehabilitation Act. *Id.* Nevertheless, the Second Circuit observed, if there had been "a colorable basis for the state to suspect that an express congressional abrogation is invalid, then the acceptance of funds conditioned on the waiver might properly reveal a knowing relinquishment of sovereign immunity." *Id.* at 114 n.4.

Post-*Garcia*, the Second Circuit has instructed district courts to "determine whether New York waived its sovereign immunity by accepting federal funds via the Rehabilitation Act during the time period in dispute." *Marino*, 18 F. Supp. 3d at 330 (citing *Warren v. Goord*, 81 F. App'x 400, 401 (2d Cir. 2003) (summary order)). District courts throughout this Circuit, including in this District, "have held that New York's continued acceptance of federal funds under § 504 after

24

*Garcia* constitutes a knowing waiver of sovereign immunity under that provision." *Id.* at 331-32 (collecting cases); *see also Alexander v. State Univ. of N.Y. at Buffalo*, 932 F.Supp.2d 437, 443 (W.D.N.Y. 2013) ("[T]he Court is persuaded that New York, by accepting federal funds after the *Garcia* decision, has waived sovereign immunity for damage suits brought under [S]ection 504 of the Rehabilitation Act of 1973."); *accord Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.*, 374 F. Supp. 3d 276, 298 (W.D.N.Y. 2019) ("[B]ecause the actions alleged in this matter all took place years after the Second Circuit's decision in *Garcia*, there is no question that the Commissioner does not enjoy sovereign immunity from the Section 504 monetary claims alleged here.").

While compensatory damages claims under § 504 of the Rehabilitation Act are not precluded by the Eleventh Amendment, a plaintiff nevertheless must plead and prove "intentional violations" of the Rehabilitation Act. *Bartlett v. N.Y. State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999). "The standard for intentional violations is 'deliberate indifference to the strong likelihood [of] a violation[.]'" *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (first alteration in original) (quoting *Bartlett*, 156 F.3d at 331). As discussed above in this Order, Plaintiff has sufficiently alleged, for purposes of initial screening under 28 U.S.C. § 1915A, that DSP Urban acted with deliberate indifference in denying Plaintiff reasonable accommodations for his visual impairment. Accordingly, at this point in time, the Court cannot rule out the possibility that claims for money damages *may* be available under § 504 of the Rehabilitation Act to Plaintiff. Therefore, the Court will allow such claims to proceed to service.

### 4. Eleventh Amendment Immunity and the Availability of Compensatory Damages Under Title II of the ADA

It is a more complicated question whether the Eleventh Amendment precludes recovery of money damages against New York state and its officials under Title II of the ADA which, in contrast to the Rehabilitation Act, was not enacted pursuant to Congress's power under the Spending Clause of Article I. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 327 (S.D.N.Y. 2007) ("The Rehabilitation Act, . . . unlike the ADA, was enacted pursuant to Congress's power under the Spending Clause of Article I and Congress may therefore impose conditions, including agreement to be subject to suit, on state entities that receive federal funds.").

As to the first requirement for abrogating sovereign immunity, Congress stated an intent under Title II of the ADA to do so. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity[.]") (emphasis omitted); 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.").

As to the second requirement, "[i]n enacting Title II, Congress purported to rely on its authority under both the Commerce Clause of Article I and § 5 of the Fourteenth Amendment." *Garcia*, 280 F.3d at 108 (citing 42 U.S.C. § 12101(b)(4) invoking the "sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities")). "To the extent that Title II rests on Congress's authority under the Commerce Clause, it cannot validly abrogate state sovereign immunity[,]" *id.*, "because 'Congress may not . . . base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article

26

I.'"  *Id.* (quotation and citation omitted).  However, § 5 of the Fourteenth Amendment's "does grant Congress the authority to abrogate the States' sovereign immunity."  *Id.* (quotation omitted).  Therefore, the fundamental question is whether Title II's abrogation of sovereign immunity constitutes a "valid exercise," *id.* of power under § 5 of the Fourteenth Amendment.

In *Georgia*, the Supreme Court remanded that question to the lower court, instructing it to determine,

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

546 U.S. at 159.  "Thus, *Georgia* explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment."  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194 (2d Cir. 2015).  Moreover, *Georgia* "suggested that ADA claims for damages may proceed under expanded circumstances."  *Doherty v. Bice*, No. 18-CV-10898 (NSR), 2020 WL 5548790, at *8 (S.D.N.Y. Sept. 16, 2020) (citing *Dean*, 804 F.3d at 194).

Since the Supreme Court's decision in *Georgia*, the Second Circuit has "note[d] a growing fracture among the district courts in this Circuit in their approach to determining whether Congress validly abrogated state sovereign immunity under Title II of the ADA."  *Id.*  Some courts continue to apply the Second Circuit's approach articulated in *Garcia*, a pre-*Georgia* case holding that "a private suit brought pursuant to Title II of the ADA for money damages can only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability."  *Henrietta D.*, 331 F.3d at 288 (citing *Garcia*, 280 F.3d at 111-12); *see also Dean*, 804 F.3d at 194 n. 7 (collecting cases).  Other courts have

opted to apply the three-part test that the Supreme Court in *Georgia* instructed the state court to apply on remand. *Dean*, 804 F.3d at 195 n.8 (collecting cases); *see also Lenti*, 2020 WL 4275600, at *7-8; *Goonewardena*, 475 F. Supp. 2d at 323-27. To date, the Second Circuit has declined to answer the question. *Dean*, 803 F.3d at 194.

At this point in the proceeding, it suffices to note that compensatory damages under Title II of the ADA are not barred by sovereign immunity as a matter of law. Therefore, the Court will allow Plaintiff's claim for such damages to proceed to service.

## IV.     Motion for Preliminary Injunction

In his Motion for a Preliminary Injunction, ECF No. 4, Plaintiff asks that Defendants be "restrained from denying Plaintiff visor (tinted) over window outside Plaintiff's cell, support cane, sunglasses, CCTV, magnifiers, large print, Braille print, Braille equipment, cassette player, and watch." *Id.* at 2.

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (citation omitted). Where, as here, the party seeks injunctive relief that will alter rather than maintain the *status quo*, he must demonstrate a "clear or substantial likelihood of success on the merits." *Id.* "[A] district court should approach issuance of injunctive orders with the usual caution," *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994) (citation omitted), to

avoid becoming "enmeshed in the *minutiae* of prison operations." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)

Because an alleged violation of a constitutional right "triggers a finding of irreparable harm[,]" *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996), a plaintiff who successfully pleads such a violation necessarily satisfies the requirement that a party applying for a preliminary injunction show irreparable harm. *See Statharos v. N.Y. City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.") (citation omitted). Nonetheless, the Court cannot find, at this early stage of the proceeding, that Plaintiff has demonstrated a "clear or substantial likelihood of success on the merits," *Doninger*, 527 F.3d at 47.

Courts in this Circuit have observed that "[w]hen screening a *pro se* complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1) . . . [for] failure to state a claim upon which relief can be granted[,]. . . a district court applies the same standard . . . that it does to a motion to dismiss." *Santos v. Keenan*, No. 17-CV-0984 LJV-HKS, 2020 WL 2859202, at *2 (W.D.N.Y. Feb. 6, 2020) (citing *McGhie v. Main*, No. 11-CV3110 (NGG)(JO), 2011 WL 4852268, at *1 (E.D.N.Y. Oct. 12, 2011) ("Section 1915A's third ground for dismissal—legal sufficiency—is identical to the dismissal standard under Federal Rule of Civil Procedure 12(b)(6).") (other citations omitted), *report and recommendation adopted*, No. 17-CV-984, 2020 WL 1025189 (W.D.N.Y. Mar. 3, 2020); *see also Shakur*, 391 F.3d at 112 (equating standards for dismissal under 28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(6)); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (legal sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6) is determined by application of the "plausibility standard" in *Iqbal* and *Twombly*).

A movant seeking a preliminary injunction, however, "must do more than merely set forth 'enough facts to state a claim to relief that is plausible on its face' in order "to establish a clear or substantial likelihood of success on the merits." *Benitez v. King*, 298 F. Supp. 3d 530, 536 (W.D.N.Y. 2018) (quoting *Twombly*, 550 U.S. at 570) (citing *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957 (ADS)(AKT), 2017 WL 6459464, at *8 (E.D.N.Y. Dec. 15, 2017) (noting that the standard required to prevail on a motion for a preliminary injunction "is higher than one to overcome a motion to dismiss"); *Lomax v. Aegis Funding Corp.*, No. 09-CV-2321 (ARR) (LB), 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (stating that in the context of a motion to dismiss, "[p]lausibility . . . does not refer to the likelihood of success on the merits of the legal claim")).  Because the Complaint at most sets forth enough facts to state a claim to relief that is plausible on its face, Plaintiff has not met the "far more demanding standard," *Benitez*, 298 F. Supp. 3d at 536, for demonstrating entitlement to injunctive relief.  Therefore, his Motion for a Preliminary Injunction will be denied without prejudice.

## V.     Motion for Default Judgment

Plaintiff has filed a Motion for Default Judgment, ECF No. 14, based on Defendants' purported failure to answer the Complaint.  As an initial matter, it appears that the Motion may have been filed in the wrong case.  Although Plaintiff has used the civil number assigned to this action, he mentions defendants (Rushford, Devlin-Vanin, Sheehan, and King), *see* ECF No. 14 at 2, none of whom are mentioned in the Complaint or named in the caption.  Furthermore, these defendants are not named in the other action filed by Plaintiff in this District, 6:22-cv-06202-FPG, which, in any event, was administratively closed on May 10, 2022.

However, the Northern District of New York's CM/ECF system indicates that Plaintiff has a currently pending action there naming Mathew Rushford, Susan Devlin-Vanin, Mary Sheehan,

and Mariejose King as defendants.  *See Thompson v. New York State Corrs. and Comty. Supervision, et al.*, 9:22-cv-00289-TJM-CFH (N.D.N.Y. Mar. 25, 2022).  In any event, assuming the Motion is directed to the Defendants in this case, it must be denied.

"As the term 'default judgment' suggests, a prerequisite for obtaining such a judgment is that the non-movant be in default."  *Francis v. Major World Car Dealership*, No. 19CV189BMCRER, 2019 WL 4686505, at *2 (E.D.N.Y. Sept. 26, 2019) (citing Fed. R. Civ. P. 55(a) which provides that a party is entitled to an entry of default when the party against whom judgment is sought "has failed to plead or otherwise defend")).  A defendant can avoid a default by answering or otherwise responding to the complaint within twenty-one days of receiving the summons and complaint.  *See* Fed. R. Civ. P. 5(a)(2), 12(a)(1)(A).  Since the Complaint has not yet been served in this matter, Defendants cannot be in default.  *See Francis*, 2019 WL 4686505, at *3  ("Although Defendants have not responded to [the] claims [in the Amended Complaint], the nonresponse is excusable because the Amended Complaint has yet to be served.").  "Further, a party may not obtain a default judgment unless and until the Clerk of the Court has entered the default."  *Dekom v. New York*, No. 12-CV-1318 JS ARL, 2013 WL 3095010, at *5 (E.D.N.Y. June 18, 2013) (citing Fed. R. Civ. P. 55(a), (b); *Torres v. Exec. Officer BFI Waste Sys.*, No. 95-CV-1068, 1996 WL 328214, at *1 (W.D.N.Y. June 11, 1996) denying a motion for default judgment as "premature" because there had been no entry of default)).  No entry of default has occurred here, and no equivalent notation exists in the record, *see*, *e.g.*, *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983) (finding court order "functionally equivalent" to entry of default despite no formal notation on docket).  Plaintiff's Motion for Default Judgment is procedurally improper and must be denied.

VI.     **Motion to Appoint Counsel**

Title 28 U.S.C., Section 1915(e) authorizes the courts to "request an attorney to represent any person unable to afford counsel."  A number of factors must be considered before a court can undertake such an action, including the threshold requirement that the indigent plaintiff's "position seems likely to be of substance."  *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986).

Plaintiff asserts that he is entitled to appointment of counsel because his case is complicated, he has sensorial disabilities, he cannot have unlimited access to the law library due to Defendants' wrongful actions as detailed in the Complaint, and that he does not know civil law well.  ECF No. 5 at 1.  Notwithstanding these challenges, Plaintiff sufficiently pleaded at least one Eighth Amendment claim along with reasonable accommodation claims under the ADA and the Rehabilitation Act.  *See Shenko v. Yorkville Vill.*, No. 621CV0017LEKTWD, 2021 WL 2910289, at *2 (N.D.N.Y. July 12, 2021) (denying motion to appoint counsel as premature where it appeared to the district court that *pro se* plaintiff had been able to effectively litigate the action).  Furthermore, this action was only recently commenced, and it is unclear which claims will proceed to service because Plaintiff has not yet filed an amended complaint.  Plaintiff's Motion to Appoint Counsel is therefore denied without prejudice as premature.  *See Roberts v. Blowers*, No. 21-CV-6187 FPG, 2021 WL 1579072, at *5 (W.D.N.Y. Apr. 22, 2021)

**CONCLUSION**

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the correct supporting documentation, his request to proceed *in forma pauperis* is granted.  For the reasons set forth above, the Court finds that the following claims may proceed to service as currently pleaded: the Eighth Amendment deliberate indifference claim against DSP Urban in his individual capacity only; the Title II ADA claim against DOCCS and against Superintendent Yehl

32

and DSP Urban in their official capacities only; and the § 504 Rehabilitation Act claim against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities only.  The Court dismisses the Eighth Amendment deliberate indifference claims against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities because these defendants are immune from suit under the Eleventh Amendment.  The Court also dismisses the Eighth Amendment deliberate indifference claim against Superintendent Yehl in his individual capacity for failure to state a claim, without leave to replead.  To the extent the Complaint asserts Fourteenth Amendment due process and equal protection claims against DOCCS, and against Superintendent Yehl and DSP Urban in their individual and official capacities, the Court dismisses all such claims without leave to replead.

It is unclear whether Plaintiff intends to pursue Eighth Amendment deliberate indifference claims, Title II ADA claims, or Rehabilitation Act § 504 claims against "unnamed Wende medical personnel" and Nurse Administrator Gugino.  If he does wish to proceed on such claims, Plaintiff will be afforded an opportunity to file an amended complaint as to the potential Eighth Amendment deliberate indifference claims, Title II ADA claims, and Rehabilitation Act § 504 claims against the "unnamed Wende medical personnel" and Nurse Administrator Gugino as discussed above in this Order.

It is also unclear whether Plaintiff wishes to proceed on ADA Title II and Rehabilitation Act § 504 claims for the prospective injunctive relief requested in the Motion for a Preliminary Injunction.  If he does wish to seek this prospective injunctive relief as part of his Complaint, he must file an amended complaint that specifically includes a demand for such injunctive relief.

Plaintiff's amended complaint is due **within forty-five** days of the date of this Order.  The amended complaint must include the necessary allegations as directed above and must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action, and thus it renders any prior complaint of no legal effect.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint that Defendants must answer in this action.  Plaintiff therefore must also include in any amended complaint his allegations and claims that the Court has allowed to proceed—the Eighth Amendment deliberate indifference claim against DSP Urban in his individual capacity only; the Title II ADA claim against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities only; and the § 504 Rehabilitation Act claim against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities only.  Because the amended complaint will become the sole complaint in the action, it is the only complaint which will be served on the parties.  Failure to include these claims in it means that they will not be preserved for service on Defendants.

## ORDER

IT HEREBY IS ORDERED that the Motion to Proceed *In Forma Pauperis*, ECF No. 7, is **GRANTED**; and it is further

ORDERED that the Motion for a Preliminary Injunction, ECF No. 4; Motion to Appoint Counsel, ECF No. 5; and Motion for Default Judgment, ECF No. 14, are **DENIED WITHOUT PREJUDICE**; and it is further

ORDERED that Plaintiff's Eighth Amendment deliberate indifference claims against Superintendent Yehl and DSP Urban in their official capacities; Plaintiff's Eighth Amendment deliberate indifference claim against Superintendent Yehl in his individual capacity; and Plaintiff's due process and equal protection claims under the Fourteenth Amendment are **DISMISSED WITH PREJUDICE**; and it is further

ORDERED that Plaintiff's Eighth Amendment deliberate indifference claim against DSP Urban in his individual capacity; claim for the denial of reasonable accommodations under Title II of the ADA against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities; and claim for the denial of reasonable accommodations under § 504 of the Rehabilitation Act against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities **MAY PROCEED TO SERVICE**; and it is further

ORDERED that Plaintiff is granted leave to file an amended complaint as directed above to attempt to allege plausible Eighth Amendment deliberate indifference claims, Title II ADA claims, and Rehabilitation Act § 504 claims against "unnamed Wende medical personnel" (whom he must identify by name or sue as John Doe or Jane Doe defendants) and Nurse Administrator Gugino; and it is further

ORDERED that if Plaintiff does not file an amended complaint as directed above, any Eighth Amendment claims, Title II ADA claims, and Rehabilitation Act § 504 claims against "unnamed Wende medical personnel" and Nurse Administrator Gugino will be **DISMISSED WITH PREJUDICE**; and it is further

ORDERED that if Plaintiff does not file an amended complaint as directed above within **forty-five days** of the date of this Order, the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the Summons, Complaint, and this Order regarding the Eighth

Amendment deliberate indifference claim against DSP Urban in his individual capacity; the claim for the denial of reasonable accommodations under Title II of the ADA against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities; and the claim for the denial of reasonable accommodations under § 504 of the Rehabilitation Act against DOCCS and against Superintendent Yehl and DSP Urban in their official capacities upon the Defendants named in the caption, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in his favor; and it is further

ORDERED, that, pursuant to 42 U.S.C. § 1997e(g), Defendants are directed to answer the Complaint upon service; and it is further

ORDERED that Plaintiff shall notify the Court in writing if his address changes.  The Court may dismiss the action if Plaintiff fails to do so.

SO ORDERED.

Dated:       September 28, 2022
             Rochester, New York


                                        FRANK P. GERACI, JR.
                                        UNITED STATES DISTRICT JUDGE
                                        WESTERN DISTRICT OF NEW YORK